## JOSEPH HONNARD

*v.*

## THE PEOPLE OF THE STATE OF ILLINOIS.

MANSLAUGHTER—*liability of physician for death of his patient.* Where a physician, attending a female sick with bilious fever, and five months advanced in pregnancy, gave her no strong medicines, or did any act to bring about a miscarriage, and she was taken in labor, which proved ineffectual until the *fœtus* was removed by force, and she afterwards died from puerperal fever, not induced by anything done or omitted to be done by the physician, it was *held*, that a conviction of him for manslaughter could not be sustained.

WRIT OF ERROR from the Circuit Court of Jackson county; the Hon. M. C. CRAWFORD, Judge, presiding.

This was an indictment against Joseph Honnard, for manslaughter, in causing the death of Jane Stevenson. The opinion of the court states the facts of the case.

Mr. L. P. BUTLER, for the plaintiff in error.

Mr. JAMES K. EDSALL, Attorney General, for the People.
31—77TH ILL.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

The plaintiff in error was indicted at the February term, 1873, of the Jackson county circuit court, for manslaughter, in causing the death of one Jane Stevenson. At the February special term, 1875. of that court, a trial was had, resulting in a verdict of guilty, the jury fixing the punishment at four years in the penitentiary, and sentence was passed upon the verdict. The defendant brings the record to this court upon error.

The bill of exceptions purports to contain all the evidence, and shows that a motion for a new trial was made, overruled by the court, and the proper exception taken. The only question we propose to consider, was raised by that motion, and is : Was the evidence sufficient to support the verdict?

The plaintiff in error was a practicing physician. The deceased, Jane Stevenson, was a married woman, living with her husband. Prior, and at September 7, 1873, the deceased was sick with bilious fever. The accused was attending her as physician. Her husband was, at the same time, lame, in consequence of an injury received at a mine, and was under the care of another physician, Dr. Cavenaugh.

Deceased being some five months advanced in pregnancy, Dr. Honnard, the plaintiff in error, was, as all the testimony concurs in showing, extremely careful as to giving her any strong medicines, and there is no evidence tending to show that he was in any respect responsible for the miscarriage she commenced to have on said 7th of September. After her labor pains had commenced, he, being sent for, came. The patient's bowels were severely constipated, and had been for several days previously. Her labor was ineffectual, and the doctor undertook to aid in the removal of the *fœtus* by force. Of the first, and apparently only, presentation, he succeeded in bringing away all but the head. Having no forceps, he undertook to improvise a substitute, by the use of two spoons.

The evidence is somewhat doubtful whether he used the spoons to any extent. Being unwell himself at the time, he gave up his endeavors to bring away the head, left, and sent Dr. Mahoney to take charge of the patient. The latter gave her *ergot*, and after a while the head came away with another *fœtus* besides. From this time, which was September 7th, until the 14th of the same month, the patient had no physician. Dr. Cavenaugh, who was attending her husband, prescribed for her, but the women in attendance, who were called as witnesses for the prosecution, testify that she refused to take any of the remedies prescribed. Her bowels remained badly constipated, and the women gave her blue mass and Wright's Vegetable Pills, which produced an operation, but she relapsed into even worse constipation, and, some four or five days after the miscarriage, puerperal fever set in, and, on the 14th. Dr. Mahoney was sent for, and, on the next day, Dr. O'Hara, both of whom visited her. On the 16th of September, 1873, she died. The evidence is all one way, that she died of puerperal fever.

The medical testimony is to the effect that the use of traction or force, in such case, is recognized as proper practice under some circumstances. The miscarriage was an inevitable result when the accused was called on the 7th. He had not in any way contributed, so far as the evidence shows, to its causation. He says the *fœtus* was dead then, and there is nothing to contradict him. What he did, therefore, in aid of the miscarriage, was not unlawful. He may not have acted with either the best judgment or even ordinary skill. But no unprejudiced person can read the evidence without being convinced that he acted with good motives, and the evidence wholly fails to show that the puerperal fever, of which the patient died, was caused by anything done or omitted to be done by the accused.

If physicians and surgeons can be convicted of manslaughter, and sent to the penitentiary, upon such evidence as this record contains, there would soon be witnessed a frightful

devastation of their ranks. The accused was a regularly educated physician, and had had considerable practice. There is wanting in this case every element of the crime of manslaughter but that of the mere death of a human being.

The court erred in denying the motion for a new trial, and for that reason the judgment must be reversed and the cause remanded.

*Judgment reversed.*